UNITED STATES of America

v.

Jose CASIANO, a/k/a Jose Rivera
Jose Casiano, Appellant.

UNITED STATES of America

v.

Alfredo DeJESUS.

Nos. 96–1256, 96–1380.

United States Court of Appeals,
Third Circuit.

Argued Nov. 4, 1996.

Decided May 7, 1997.

---

* *Judge Restani's vote was limited to rehearing* before the original panel.

Barnaby C. Wittels (Argued), Stephen Robert LaCheen and Associates, Philadelphia, PA, for Appellant, Jose Casiano.

James A. Lammendola (Argued), Lammendola and Lammendola, Philadelphia, PA, for Appellant, Alfredo DeJesus.

Michael R. Stiles, United States Attorney, Walter S. Batty, Jr., Assistant United States Attorney, Wendy A. Kelly (Argued), Assistant United States Attorney, Philadelphia, PA, for U.S.

Before: SLOVITER, Chief Judge, McKEE, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Chief Judge.

In this consolidated action, appellants Jose Casiano and Alfredo DeJesus, each of whom pled guilty to both carjacking and kidnapping, appeal from the application of the twenty-year enhancement mandated by 18 U.S.C. § 924(c)(1) for a second or subsequent conviction for using a firearm in relation to a crime of violence. They contend that despite the literal language of the statute, the enhancement is not applicable if the second conviction arises from the same criminal episode and involves the same victim as the first

conviction. Casiano appeals his firearms conviction, arguing that he is not liable under the standard enunciated in *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), for the "use and carrying" of a firearm under 18 U.S.C. § 924(c)(1). Casiano and DeJesus also contest the district court's rulings on their respective motions for downward departures. We have jurisdiction of these appeals, which we had consolidated under 28 U.S.C. § 1291.

## I.

### FACTS AND PROCEDURAL HISTORY

On July 6, 1995, after a binge of snorting heroin and angel dust lasting approximately six hours, Jose Casiano, Alfredo DeJesus, and Jose Cantero, a fifteen-year old juvenile, left the house of Casiano's cousin in Philadelphia and began walking back to their homes in Camden. Both Cantero and DeJesus were carrying .380 automatic pistols. One of the three suggested that they steal a car. At approximately 10:00 p.m., they saw Father Marc Shinn, a Russian Orthodox priest, getting out of his Dodge van. DeJesus approached Father Shinn, hit him in the head with the butt of the gun and forced him into the back of the van. Father Shinn was then forced at gunpoint to lie in the back of the van, where Cantero sat on his back, covered his head with a blanket, and held a gun to his head. With DeJesus driving, they drove the van back to Camden.

Father Shinn told the men he was a priest; one of them answered, "We don't fucking care if you are a fucking priest." During the forty-five minutes in which Father Shinn was held captive in the back of the van, Cantero straddled him, simulating anal sex, and repeatedly pistol-whipped and threatened him. Father Shinn lost consciousness several times. His captors stated that because Father Shinn had seen DeJesus's face, he would have to be killed, and they openly discussed how and where they would kill him.

They stopped the van when they reached a remote location in Camden. Casiano and Cantero forced Father Shinn out of the van without his shoes or glasses, and Cantero then forced him to walk at gunpoint through a ditch of water approximately one foot deep and through a grassy field, pushed him to the ground and fired twice a this back. One shot narrowly missed Father Shinn's head, and the other shot hit him in the back. Father Shinn feigned death. Cantero returned to the van, shouting "I shot, I shot," and the three assailants drove away, leaving Father Shinn lying on the ground.

The bullet actually went through Father Shinn's shoulder, he was not critically injured, and he managed to get help. A short time later, one of the paramedics who assisted Father Shinn and his partner recognized the van from the description given by Father Shinn. He called the police, and the three perpetrators were apprehended while sitting in the van outside a bar. The police also found four firearms in the van—the two .380 pistols, one sawed-off shotgun, and one .38 revolver, all loaded with live ammunition.

DeJesus and Casiano were indicted on August 3, 1995 by a federal grand jury sitting in the Eastern District of Pennsylvania. Cantero was indicted separately. This court upheld the district court's order granting the government's motion to try him as an adult. *See United States v. J.C.*, No. 95–1809 (3d Cir. May 24, 1996).

Both DeJesus and Casiano were charged with one count of conspiracy to commit carjacking and kidnapping in violation of 18 U.S.C. § 371, one count of carjacking in violation of 18 U.S.C. § 2119, one count of kidnapping in violation of 18 U.S.C. § 1201(a)(1), and two counts of using a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1). Casiano entered a guilty plea, pursuant to a plea agreement, to all counts on October 23, 1995. DeJesus entered an open guilty plea to all counts on December 22, 1995.

The district court sentenced Casiano to 188 months imprisonment on the conspiracy, carjacking and kidnapping counts to run concurrently. In addition, the court sentenced him to an additional 60 months for the use of a firearm in relation to the carjacking pursuant to 18 U.S.C. § 924(c)(1), to run consecutively to the substantive counts. The court then imposed an additional sentence of 240 months imprisonment for the use of a firearm in relation to the kidnap-

ping and, pursuant to the same statute, imposed that sentence to run consecutively. The total imprisonment for Casiano thus was 488 months.

DeJesus was sentenced to 70 months imprisonment on the conspiracy, carjacking and kidnapping counts to run concurrently to each other, and an additional 60 months for the first violation of 18 U.S.C. § 924(c)(1), to run consecutively, and 240 months for the second violation of 18 U.S.C. § 924(c)(1), to run consecutively.

The principal challenge raised by both Casiano and DeJesus on appeal is to the application of § 924(c)(1) to the second offense, which added an additional twenty years imprisonment to their sentences.

## II.

### CHALLENGES TO SENTENCES UNDER § 924(c)(1)

#### A.

The relevant statute, 18 U.S.C. § 924(c)(1), provides, in pertinent part:

Whoever, during and in relation to any crime of violence ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence ... be sentenced to imprisonment for five years.... *In the case of his second or subsequent conviction under this subsection,* such person shall be sentenced to imprisonment for twenty years.... Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence ... in which the firearm was used or carried.

18 U.S.C. § 924(c)(1) (Supp.1996) (emphasis added).

Appellants Casiano and DeJesus argue that because the criminal course of conduct from the carjacking (the first predicate offense) to the kidnapping (the second predicate offense) was continuous and involved only one victim, the district court erred as a matter of law in applying § 924(c)(1) to use

of a handgun in connection with the kidnapping as "a second or subsequent conviction." However, they point to nothing in the language of the statute to support their statutory construction and our searching inquiry has uncovered no support for their position. The statute speaks in terms of "conviction," not criminal episode. This textual approach to § 924(c)(1) is compelled by the Supreme Court's interpretation of that statutory provision in *Deal v. United States,* 508 U.S. 129, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993).

Deal, who had committed six armed robberies at different banks on different dates within a four-month period, was charged in one indictment with, *inter alia,* six bank robberies and six counts of violation of 18 U.S.C.§ 924(c)(1). Upon Deal's conviction on all charges, he was sentenced to five years imprisonment on the first § 924(c)(1) count and to twenty years on each of the five other § 924(c)(1) counts, each term to run consecutively. The issue before the Supreme Court was "whether [Deal's] second through sixth convictions under § 924(c)(1) in [a] single proceeding arose '[i]n the case of his second or subsequent conviction' within the meaning of § 924(c)(1)." *Id.* at 131, 113 S.Ct. at 1996.

The Court rejected Deal's argument that because "conviction" could mean either the finding of guilt or the entry of a final judgment of guilt, § 924(c)(1) should be limited to the latter under the rule of lenity. Under Deal's construction, the "second or subsequent conviction" as used in § 924(c)(1) would have had to occur in a separate adjudication. Justice Scalia parsed the text of the statute and concluded that the only coherent reading of the language was that the word "conviction" used there referred to a finding of guilt, and not to a final judgment, *id.* at 132, 113 S.Ct. at 1996, and that because "findings of guilt on several counts are necessarily arrived at successively in time," *id.* at 133 n. 1, 113 S.Ct. at 1997 n. 1, a finding of guilt on each count after the first was "second or subsequent," *id.*

The dissent in *Deal* argued that "subsequent conviction" as used in § 924(c)(1) "clearly is intended to refer to a conviction for an offense committed after an earlier conviction has become final; it is, in short, a

recidivist provision." *Id.* at 141–42, 113 S.Ct. at 2001 (Stevens, J., dissenting). Inasmuch as that argument was expressly rejected by the *Deal* majority, Casiano and DeJesus do not repeat it here. Instead, they contend that § 924(c)(1) was never intended to punish subsequent convictions arising out of a single criminal enterprise involving the same victim. They attempt to distinguish *Deal* because it involved six separate and distinct robberies, which were committed over a period of four months at six different Houston area banks and necessarily involved numerous victims. They note that *Deal* and the opinions of the courts of appeals subsequent to *Deal* are silent as to whether multiple § 924(c)(1) offenses under these facts can constitute "second or subsequent" convictions. They argue that therefore we should conclude that the twenty-year enhancement under § 924(c)(1) does not reach them.

This court has not yet been faced with this precise factual scenario. Nonetheless, the language and reasoning of *Deal* ineluctably require rejection of this argument. In order to adopt defendants' argument, we would have to limit the statutory language "second or subsequent conviction" to exclude a conviction that arises out of the same criminal episode involving the same victim. Defendants would have us insert words in the statute which simply are not there. In doing so, they would require us to ignore that Congress specifically commanded that the enhancement would apply to "any" crime of violence without regard to temporal considerations.

Just as the Supreme Court in *Deal* declined to differentiate between convictions embodied in separate judgments and those embodied in separate charges in the same indictment, so also we cannot distinguish between criminal acts that occur over a period of time and/or affect various victims and those that result from the same course of criminal activity and involve one victim. The *Deal* Court was unequivocal in holding that under § 924(c)(1) "conviction" means "the finding of guilt by a judge or jury that necessarily precedes the entry of a final judgment of conviction," and that more than one "conviction" can occur in a single proceeding. *Id.*

at 131–32, 113 S.Ct. at 1996. The Court stated: "The present statute ... does not use the term 'offense,' so it cannot possibly be said that it requires a criminal act after the first conviction. What it requires is a *conviction* after the first conviction. There is utterly no ambiguity in that...." *Id.* at 135, 113 S.Ct. at 1998 (emphasis added).

Those circuits that have had occasion to interpret § 924(c)(1) after *Deal* have uniformly required the imposition of twenty-year consecutive sentences for second and subsequent convictions on multiple counts of § 924(c)(1) notwithstanding a factual nexus between the predicate offenses. In *United States v. Floyd*, 81 F.3d 1517 (10th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 144, 136 L.Ed.2d 91 (1996), a case closely parallel to this one, defendant Floyd was sentenced to two § 924(c)(1) convictions corresponding to the carjacking of the truck of a school principal and the kidnapping of his (Floyd's) stepson from that school. Floyd challenged the consecutive § 924(c)(1) sentences as duplicative on the ground that the carjacking and kidnapping were "a single, continuous event." *Id.* at 1526–27. The court held that the consecutive sentences were not duplicative because each conviction required proof of an additional fact not required by the other under the test articulated by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). *See id.*

Similarly, in *United States v. Andrews*, 75 F.3d 552, 558 (9th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 1890, 135 L.Ed.2d 183 (1996), the court rejected a challenge to a § 924(c)(1) enhancement for a second conviction in a case where the underlying offenses of murder and manslaughter occurred "virtually simultaneously," as part of the same criminal episode. And in *United States v. Camps*, 32 F.3d 102 (4th Cir.1994), *cert. denied*, 513 U.S. 1158, 115 S.Ct. 1118, 130 L.Ed.2d 1082 (1995), the court, faced with a defendant intricately involved in a violent drug conspiracy, upheld separate § 924(c)(1) convictions with consecutive terms of five, twenty, and twenty years arising out of a series of acts committed on separate days, all of which were part of the same scheme to

preserve this drug operation from a rival gang.

Casiano and DeJesus do not dispute that under the *Blockburger* test carjacking and kidnapping are distinct predicate offenses but they attempt to distinguish *Floyd* and *Andrews* on the ground that those cases involved multiple victims. They point to no language in § 924(c)(1) or in *Deal*'s interpretation of § 924(c)(1) that would support such a distinction, nor do they offer a principled reason for us to treat that difference as significant.

It is unquestionable that crimes occurring as part of the same underlying occurrence may constitute separate predicate offenses if properly charged as separate crimes. *See United States v. Fontanilla,* 849 F.2d 1257, 1258–59 (9th Cir.1988). It follows that each may be a separate predicate for a § 924(c)(1) conviction, as the court held in *Andrews,* 75 F.3d at 558.

Indeed, in *United States v. Torres,* 862 F.2d 1025 (3d Cir.1988), this court sustained convictions on two § 924(c)(1) counts that arose out of the same episode on the same day. Torres sought to protect his confederates who were being arrested for distribution of cocaine on the street by brandishing a firearm at the arresting officer. He was convicted of the predicate offenses of conspiracy to distribute cocaine and assaulting a federal officer, as well as two § 924(c)(1) offenses, i.e., use of a firearm during a drug trafficking crime (count 4) and use of a firearm in connection with an assault on a federal officer (count 5). We held that "the section 924(c)(1) convictions were proper under both counts 4 and 5." *Id.* at 1032. This alone stands as circuit precedent compelling rejection of the argument of Casiano and DeJesus, as not only did the two § 924(c)(1) convictions in *Torres* arise out of the same criminal episode, they arose out of the same act, unlike the facts in this case.

It is true, as defendants note, that in *Torres* the government stipulated that only one sentence could be imposed in that case where there were two violations of § 924(c)(1). *See id.* However, the *Torres* decision came down before *Deal* and we accepted the government's concession without comment. It is

therefore not controlling here, and to the extent it may be interpreted as contrary to *Deal,* it is superseded by *Deal. See United States v. Luskin,* 926 F.2d 372, 378 (4th Cir.1991).

Although there may be some force in defendants' argument that the enhanced penalty under § 924(c)(1) serves little purpose in a case where the predicate acts occur simultaneously and where there is not time for defendants to reflect and understand the consequences of a "second" conviction, we agree with the Ninth and Tenth Circuits that the Supreme Court's unambiguous definition of "second or subsequent conviction" in *Deal* compels our holding. That Court specifically rejected a similar argument, stating:

> We choose to follow the language of the statute, which gives no indication that punishment of those who fail to learn the "lesson" of prior conviction or of prior punishment is the sole purpose of § 924(c)(1), to the exclusion of other penal goals such as taking repeat offenders off the streets for especially long periods, or simply visiting society's retribution upon repeat offenders more severely.

*Deal,* 508 U.S. at 136, 113 S.Ct. at 1998. The fact that "section 924 sentences can produce anomalous results and will provide no additional deterrence ... cannot defeat the plain language of the statute." *Andrews,* 75 F.3d at 558.

Being bound by the Supreme Court's interpretation of § 924(c)(1) in *Deal,* we will affirm the district court's § 924(c)(1) enhancements. It is for Congress to ameliorate the result of application of the statute according to its terms, if it deems it too harsh.

**B.**

Casiano raises yet another challenge to his convictions under 18 U.S.C. § 924(c)(1). He argues that because he neither used nor carried a firearm during the carjacking and kidnapping in the manner required by *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), his two § 924(c)(1) convictions cannot stand.

In *Bailey*, the Supreme Court held that the term "use" in § 924(c)(1) requires "evidence sufficient to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Bailey*, —— U.S. at ——, 116 S.Ct. at 505. Mere possession of a firearm during the commission of a crime of violence is not sufficient to sustain a § 924(c)(1) conviction. *Id.* at ——, 116 S.Ct. at 506.

As the Court stated, "use" most "certainly includes brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." *Id.* at ——, 116 S.Ct. at 508. Casiano does not dispute that during the course of the carjacking and kidnapping, Father Shinn was struck with a gun initially, then repeatedly beaten and threatened with a gun, and finally shot and left for dead. He argues instead that because it was his co-defendants who actually engaged in these acts, he cannot be held liable under § 924(c)(1).

This court has applied § 924(c)(1) to an accomplice on an aiding and abetting theory. *See United States v. Price*, 76 F.3d 526, 529 (3d Cir.1996). Casiano emphasizes that the government here proceeded on a conspiracy theory, not aiding and abetting. A defendant convicted of conspiracy is liable for the acts of his co-conspirators in furtherance of the conspiracy only if they were reasonably foreseeable. *See United States v. Bethancourt*, 65 F.3d 1074, 1080 (3d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1032, 134 L.Ed.2d 109 (1996); *United States v. Dixon*, 982 F.2d 116, 120 (3d Cir.1992), *cert. denied*, 508 U.S. 921, 113 S.Ct. 2371, 124 L.Ed.2d 276 (1993); *cf. United States v. Collado*, 975 F.2d 985, 991 (3d Cir.1992) (holding that for sentencing purposes, attributable accomplice liability is limited to conduct "in furtherance of the ... jointly undertaken activity ... within the scope of the defendant's agreement").

For purposes of the matter of issue here, it makes no difference whether the government charged that Casiano aided and abetted DeJesus and Cantero or charged that he conspired with them because the same principle of attribution applies to a § 924(c)(1) conviction against a co-conspirator if the co-conspirator's use of the firearm was reasonably foreseeable. As we stated in *United States v. Gonzalez*, 918 F.2d 1129, 1135 (3d Cir.1990), *cert. denied*, 499 U.S. 982, 111 S.Ct. 1637, 113 L.Ed.2d 733 (1991). "As long as [a conspirator's] action was within the purview of the conspiracy, his co-conspirators are liable for his gun as if they had carried the firearm themselves." This rule of co-conspirator liability is unaffected by the Supreme Court's holding in *Bailey*, which focused on the type of "use" rather than the person responsible. *See United States v. Fike*, 82 F.3d 1315, 1328 (8th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 241, 136 L.Ed.2d 170 (1996); *United States v. Cook*, 76 F.3d 596, 603 (4th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 320, 136 L.Ed.2d 235 (1996).

Thus, the issue is whether there was sufficient evidence that Casiano could have reasonably foreseen the use of a gun by his co-conspirators. The record support for that conclusion is clear. He had spent the entire day before the carjacking and kidnapping using drugs with the other defendants, and later admitted to FBI agents that the knew that DeJesus and Cantero were both armed with .380 pistols. Casiano was present during the discussion of how and where they would kill Father Shinn. He also assisted Cantero in removing Father Shinn from the van so that he could be taken to a remote area and shot.

Furthermore, the statement of facts in Casiano's presentence investigation report, which he adopted as correct at his sentencing hearing, reported that while en route to Camden, "Casiano would on occasion go to the back of the van and also hit the victim over the head with one of the guns." It further states that "[t]he juvenile [Cantero] and Casiano hit the priest over the head with the gun ...." Casiano's own admission – recorded in the presentence report – that "DeJesus and the juvenile spotted a man near a van and they approached him and took out their guns" – further undermines his claim that he did not know his cohorts were armed and planning to use their weap-

ons. It is instead clear that Casiano knew from the very beginning of the crime that guns were involved, and he continued in his participation with the conspiracy. Given the nature and circumstances of the predicate offenses his accomplices' acts were reasonably foreseeable.

Finally, we note that Casiano entered guilty pleas to the two counts charging violations of 18 U.S.C. § 924(c)(1). Casiano has not sought to withdraw those guilty pleas, and in any event, it is evident that those pleas were supported by ample evidence. Accordingly, Casiano's § 924(c)(1) convictions under a conspiracy theory will be affirmed.

## III.

### *DEPARTURE RULINGS*

#### A.

 Casiano's final argument is that the sentencing court erred in considering factors outside of the Sentencing Guidelines when it limited the extent of a downward departure granted pursuant to U.S.S.G. § 5K1.1. Although we review district court departure decisions for abuse of discretion, *see Koon v. United States*, —— U.S. ——, ——, 116 S.Ct. 2035, 2043, 135 L.Ed.2d 392 (1996), "whether a factor is a permissible basis for departure under any circumstances is a question of law, and the court of appeals need not defer to the district court's resolution of the point," *id.* at ——, 116 S.Ct. at 2047. "The abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Id.* at ——, 116 S.Ct. at 2048. Casiano's challenge to the authority of the district court to take into account certain factors in limiting its departure is a legal question. *See id.; United States v. Romualdi*, 101 F.3d 971, 973 (3d Cir.1996).

Section 5K1.1 provides that "upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." U.S.S.G. § 5K1.1 (1995). Significantly, the guideline does not end there. Instead, § 5K1.1 continues:

(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance.

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

*Id.*

In this case, the government filed a motion under § 5K1.1 because of Casiano's substantial assistance but it did not suggest a particular level of departure that it believed was warranted. The district court departed downward three offense levels and explained its decision not to depart downward further as follows:

If I had based my decision as to how far to depart solely on the factors enumerated under section 5K1.1, I would have departed further; however, because of other factors, primarily *the extreme seriousness of the crime* and the *impact on the victim*, I felt constrained to limit the departure as I did. It may be that the additional factors I took into account are appropriately considered under Guidelines section 5K1.1(a) .... If the additional factors I took into account may not be considered under this direction, then I have looked outside section 5K1.1 in determining how far to depart downward. The additional factors I considered are consistent with the general considerations of sentencing, i.e., punishment, rehabilitation, deterrence, and the protection of society.

*United States v. Casiano*, 923 F.Supp. 684, 688 (E.D.Pa.1996) (emphasis added).

Casiano argues that the district court erred in considering the seriousness of the crime and the impact on the victim in deciding to limit the extent of the departure for Casiano's substantial assistance. Casiano states that these factors are unrelated to the extent or kind of his cooperation and are not found in either § 5K1.1 or anywhere in the Sentencing Guidelines. He concludes that therefore those factors may not be used to limit the extent of the § 5K1.1 departure. We have not previously considered whether a district court may consider factors unrelated to those enumerated in § 5K1.1 when limiting the extent of its downward departure, and thus must examine the language of § 5K1.1, the commentary, and the part played by § 5K1.1 in the scheme of the Sentencing Guidelines.

■ We begin with the now established proposition that where a "departure is legally authorized, 'the district courts are entitled to exercise a substantial amount of discretion in determining whether to depart from the guidelines.'" *United States v. Medeiros,* 884 F.2d 75, 78 (3d Cir.1989) (citations omitted). That discretion is as applicable to § 5K1.1 as it is to § 5K2.0, which covers other grounds for departure. The courts more frequently focus on the latter when emphasizing the discretion the sentencing court has in making departure decisions. *See Koon,* —— U.S. at ——, 116 S.Ct. at 2045. Although a government motion to depart is an essential predicate of § 5K1.1, once it files such a motion, the district court retains broad discretion in deciding whether or not to depart. This court, along with many others, has held that it is the district court's decision, not the prosecutor's, whether to depart and to what extent. *See United States v. Spiropoulos,* 976 F.2d 155, 162–63 (3d Cir.1992). As the court stated in *United States v. Mariano,* 983 F.2d 1150, 1155 (1st Cir.1993), the government's filing of a § 5K1.1 motion, "does not bind a sentencing court to abdicate its responsibility [or] stifle its independent judgment . . . ."

■ A district court's discretion not to depart in the face of a motion under § 5K1.1 should be as broad as its discretion not to depart under § 5K2.0, and therefore unless there has been legal error, it should be similarly immune from appellate review. *Cf. United States v. Denardi,* 892 F.2d 269, 272 (3d Cir.1989) (court of appeals lacks jurisdiction to review the merits of a discretionary refusal to depart downward from the Sentencing Guidelines).

■ Once the district court decides to grant a § 5K1.1 motion, however, there are some parameters to the exercise of the court's discretion. Although by the terms of the guidelines the bases for substantial assistance departures listed in § 5K1.1 are not meant to be exhaustive, they are instructive. The enumerated factors all concern the degree, efficacy, timeliness, and circumstances of a defendant's cooperation. *See* U.S.S.G. § 5K1.1(a); *see also Mariano,* 983 F.2d at 1156; *cf. United States v. King,* 53 F.3d 589, 591 (3d Cir.1995) (individualized qualitative examination required). There is a growing body of precedent that holds that only factors relating to a defendant's cooperation may be used as the basis of a departure under § 5K1.1. *See, e.g., United States v. Aponte,* 36 F.3d 1050, 1052 (11th Cir.1994); *United States v. Campbell,* 995 F.2d 173, 175 (10th Cir.1993); *United States v. Hall,* 977 F.2d 861, 865 (4th Cir.1992); *United States v. Valente,* 961 F.2d 133, 134–35 (9th Cir.1992). A similar holding was made in the context of substantial assistance departures from the statutory minimum on motion of the government, which is governed by similar language in 18 U.S.C. § 3553(e). *See United States v. Rudolph,* 970 F.2d 467 (8th Cir.1992).

For example, in *United States v. Chestna,* 962 F.2d 103, 106–07 (1st Cir.), *cert. denied,* 506 U.S. 920, 113 S.Ct. 334, 121 L.Ed.2d 251 (1992), the court stated that the family circumstances of the defendant should not be considered in determining the amount of downward departure to be granted under § 5K1.1. *Accord United States v. Thomas,* 930 F.2d 526, 529 (7th Cir.), *cert. denied,* 502 U.S. 857, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991). In *Chestna,* the court of appeals rejected the defendant's argument that once

the district court decided to depart, it opened the door to consideration of factors unrelated to assistance to the government in determining the appropriateness of a departure. As the court stated, "We ... find no support in the language of § 5K1.1 for defendant's argument that, once animated, § 5K1.1 does not cabin the grounds presented to the court to support a downward departure." *Chestna*, 962 F.2d at 106; *see also Mariano*, 983 F.2d at 1156.

The limitation of the grounds for departures under § 5K1.1 to factors relating to the defendant's substantial assistance to the authorities finds support in the language of the guideline and its commentary. The guideline itself is entitled "Substantial Assistance to Authorities." The background commentary states, *inter alia*, that "[l]atitude is ... afforded the sentencing judge to reduce a sentence based upon variable *relevant* factors, including those listed above." U.S.S.G. § 5K1.1, backg'd. comment. (1995) (emphasis added). It follows that had the district court decided to depart downward on a § 5K1.1 motion because it determined that the crime was not serious or the victim was only injured insignificantly, it would have been error.

■■■ Casiano's contention raises the obverse of that situation. He argues that because a district court may not consider factors wholly unrelated to substantial assistance when it decides to depart from the guideline sentencing range pursuant to § 5K1.1, the court also may not consider factors unrelated to substantial assistance when it chooses not to depart from the guideline sentencing range. Notwithstanding the facial appeal of symmetry, it does not follow that limiting the district court's basis for departure to the type of considerations outlined in § 5K1.1(a) means that the court should be similarly limited in its decision not to depart at all or to limit the extent of the departure. *See Mariano*, 983 F.2d at 1156–57; *see also United States v. Mittelstadt*, 969 F.2d 335, 336–37 (7th Cir. 1992) (consideration of defendant's chronic alcoholism on a § 5K1.1 motion not abuse of discretion); *United States v. Carnes*, 945 F.2d 1013, 1014 (8th Cir.1991) (benefit defendant received from prosecution's deci-

sion not to press an additional weapons charge permissible ground for limiting extent of downward departure).

A departure for substantial assistance is a narrow, albeit authorized, exception to the established guideline sentencing range. Therefore, the discretion exercised by the district court when making such a departure is channeled by the Sentencing Guidelines. Determinations made pursuant to the guidelines are the norm. Departures, by contrast, are exceptions and are therefore circumscribed. Indeed, there is no general, unconstrained departure provision. The closest such provision, § 5K2.0, also includes certain express restrictions. *See* U.S.S.G. § 5K2.0 (1995) (applicable *only* if there is "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration" by the Sentencing Commission). Similarly, departures provided for acceptance of responsibility are *not within the* district court's discretion. *See* U.S.S.G. § 3E1.1.

In light of the overall scheme of the Sentencing Guidelines, it was not inconsistent for the Sentencing Commission to have circumscribed the district court's discretion for departures for substantial assistance in only one direction, i.e., when a district court does, in fact, depart. As the court noted in *Mariano*: "The limitations on the variety of considerations that a court may mull in withholding or curtailing a substantial assistance departure are not nearly so stringent as those which pertain when a court in fact departs downward." *Mariano*, 983 F.2d at 1157.

The cases disclose a variety of factors that have influenced a district court's decision not to follow the government's recommendation in a § 5K1.1 motion or to limit the extent of departure. *See, e.g., United States v. Webster*, 54 F.3d 1, 4 (1st Cir.1995) (limiting extent of § 5K1.1 departure so as not to "offset" impact of mandatory 60–day month consecutive sentence); *United States v. Alvarez*, 51 F.3d 36, 39–40 & n.5 (5th Cir.1995) (limiting departure to avoid disparity in sentences with less culpable co-conspirators); *Carnes*, 945 F.2d at 1014 (limiting departure in light of benefit to defendant of failure of prosecutor to press weapon charges).

The factors relied on by the district court not to depart more than three levels because of the "extreme seriousness of the crime" and "the impact on the victim" were well within its discretion. In fact, the seriousness of the offense is one of the factors that the underlying statute expressly refers to as a relevant consideration for sentencing decisions. *See* 18 U.S.C. § 3553(a)(2)(A). Accordingly, we find no error of law by the district court in its choice to take into account the nature and circumstances of the offense in limiting the extent of the § 5K1.1 departure for Casiano.

### B.

DeJesus also poses an objection to his sentence. He claims that the district court's decision to deny him a § 5K2.0 downward departure is reviewable as an error of law. U.S.S.G. § 5K2.0 states, in relevant part:

> Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission . . .'.

U.S.S.G. § 5K2.0 (policy statement) (1995).

After the attorney for DeJesus offered details of his deprived and dysfunctional childhood and the conclusion of the psychiatrist who had evaluated him that he was a "dependent personality," App. at 69, the district court declined to grant a departure based on § 5K2.0, stating "I want you to know that *as of the record* I do not believe I have the power to depart under the provisions that you recommended that I can depart." App. at 71 (emphasis added).

DeJesus argues that this statement indicates that the district court entertained an incorrect understanding of its discretionary authority under the Sentencing Guidelines, and he asks us to remand for resentencing. *See Williams v. United States*, 503 U.S. 193, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992) (remand appropriate if the guidelines were incorrectly applied by the sentencing court).

■ To the extent that the district court's statement reflects its understanding that some of the factors to which counsel alluded were inappropriate bases for departure, the district court was correct. As the Supreme Court noted in *Koon*, there are some factors which the Sentencing Commission has made "forbidden" bases for departure. *See* —— U.S. at ——, 116 S.Ct. at 2044. Relevant here is the Sentencing Commission's statement that "[l]ack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant grounds for imposing a sentence outside the applicable guideline range." U.S.S.G. § 5H1.12 (policy statement) (1995); *see also Koon*, —— U.S. at ——, 116 S.Ct. at 2044. DeJesus sought a departure based on his troubled childhood: his mother died from a drug overdose and his father committed suicide after contracting AIDS. These are factors that may not be considered by a district court when deciding whether to depart under § 5K2.0.

■ Moreover, to the extent that the district court chose not to depart based on factors that have not been forbidden by the Sentencing Commission, we interpret the district court's statement that "as of the record" it had no power to depart as indicating that even if DeJesus had presented evidence of factors that were not forbidden, that evidence was not of a sufficient magnitude to warrant departure under § 5K2.0.

■ We thus reject DeJesus's claim that the district court misunderstood its discretionary power under the guidelines and that is improperly refused to depart because it felt constrained by a limited grant of authority. Furthermore, to the extent that Casiano is attacking the district court's exercise of discretion in refusing to reduce the sentence below the applicable guideline range, it will be dismissed for lack of jurisdiction. The court of appeals does not have jurisdiction to review the discretionary decision by a judge not to depart downward from the Sentencing Guidelines. *See Denardi*, 892 F.2d at 272. Accordingly, the district court properly denied a departure, and we will affirm the judgment of sentence.

432

## IV.

### *CONCLUSION*

For the reasons set forth above, we will affirm the district court's respective judgments of sentence as to Casiano and DeJesus.