

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-3-2008

# USA v. Archer

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1382

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Archer" (2008). *2008 Decisions.* Paper 1077.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1077

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————

Nos. 06-1382 / 06-1630 / 06-2321

—————

UNITED STATES OF AMERICA

v.

ANTHONY ARCHER,
Appellant (06-1382)

MALIK DAVIS,
Appellant (06-1630)

TYREE STRATTON,
Appellant (06-2321)

—————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 05-cr-00068-3/1/2)
District Judge: Honorable Stewart Dalzell

—————

Submitted Under Third Circuit LAR 34.1(a)
November 6, 2007

Before: SCIRICA, Chief Judge, AMBRO, and JORDAN, Circuit Judges

(Opinion filed:  June 3, 2008)

—————

OPINION

—————

AMBRO, <u>Circuit Judge</u>

Defendants Anthony Archer, Malik Davis, and Tyree Stratton were charged with conspiracy to commit armed bank robbery, armed bank robbery, and using a weapon during a crime of violence. Archer and Davis pled guilty, and Stratton was convicted by a jury. Each was sentenced to a significant term of imprisonment. Archer and Davis appeal their sentences, and Stratton appeals both his conviction and sentence. For the reasons explained herein, we affirm.[1]

## I. Facts

In November 2004, defendants Archer, Davis, and Stratton robbed a Wachovia Bank in Philadelphia, PA. In the course of the robbery, one robber—who could not be identified because the defendants were all wearing masks—became angry when he learned that the bank employee with the vault key was out to lunch. Consequently, he shot his weapon into the floor, causing one of the victims to sustain a bullet fragment in her head. Defendants robbed the bank of approximately $2,763. They fled, first by car, and when they hit another vehicle and flipped their own car, defendants took off on foot.

---

[1] The District Court exercised jurisdiction over these matters pursuant to 18 U.S.C. § 3231. We have jurisdiction on appeal pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. *See United States v. Cooper*, 437 F.3d 324, 327–28 (3d Cir. 2006). With regard to sentencing, we review "factual findings relevant to the Guidelines for clear error" and exercise "plenary review over a district court's interpretation of the Guidelines." *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (*en banc*). We also exercise plenary review over constitutional questions. *United States v. McKoy*, 452 F.3d 234, 236 (3d Cir. 2006). We review the overall sentence for reasonableness. *Cooper*, 437 F.3d at 326–27.

During flight, Archer pointed a gun at police officers, and the police fired at him, shooting him in the arm. All three defendants were ultimately arrested, and the police were able to recover all but $33 of the stolen money.

Defendants were charged with conspiracy to commit armed bank robbery, in violation of 18 U.S.C. § 371 (Count I), armed bank robbery, in violation of 18 U.S.C. § 2113(d) (Count II), and using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1) (Count III). As noted, Archer and Davis pled guilty to all counts, and Stratton was tried by a jury and convicted on all counts. Archer was sentenced to a 216-month term of imprisonment, a five-year term of supervised release, restitution in the amount of $29,533,[2] and a $300 special assessment. Davis was sentenced to a 340-month term of imprisonment, reflecting 220 months on each of Counts I and II (to run concurrently) and 120 months on Count III (to run consecutively), a five-year term of supervised release, restitution in the amount of $29,533, and a $300 special assessment. Stratton was sentenced to a 260-month term of imprisonment, reflecting 140 months on each of Counts I and II (to run concurrently) and 120 months on Count III (to run consecutively), a five-year term of supervised release, restitution in the amount of $29,533, and a $300 special assessment.

On appeal, Archer argues that the District Court erred in assessing two criminal

---

[2] The defendants' $29,533 restitution consists of a $33 obligation to the bank, which is the amount that could not be recovered from sum stolen, and a $29,500 obligation to the insurer of the vehicle hit by the defendants in their failed car-chase get-away.

history points for a juvenile adjudication for simple assault. Davis raises four objections to his sentence: (1) that the career criminal enhancement he received over-represents his criminal history and (2) violates his Sixth Amendment rights, (3) the District Court improperly imposed a ten-year mandatory minimum sentence, and (4) the ultimate sentence was unreasonable. Finally, Stratton requests a new trial and/or sentencing hearing, claiming that he was prejudiced at trial by the Government's opening statement and the admission of certain evidence. He further contends that his sentence is unreasonable and that he should receive a lower criminal history calculation under the amendments to the U.S. Sentencing Guidelines that took effect on November 1, 2007.

## II. Discussion

### A. Anthony Archer

Archer argues that the District Court should not have assessed him two criminal history points for his juvenile adjudication for simple assault because the facts of the incident that gave rise to that adjudication are in dispute. Specifically, as explained in the Pre-Sentence Report, the juvenile petition for the simple assault charged that Archer had pointed a handgun at an unidentified man and demanded that he remove his clothes. During an interview with the probation office, Archer described the incident as a street fight between him and another young man. He insisted that he did not point a gun or demand that the young man remove his clothes. Because the details of the juvenile adjudication are in dispute, Archer contends that the PSR's reporting of the adjudication

4

was "unreliable" and the District Court's reliance on it runs afoul of *Shepard v. United States*, 544 U.S. 13 (2005). This argument fails because, whether the incident involved a gun or was merely a street brawl, it is still an adjudication for simple assault that results in a two-point addition to Archer's criminal history. Thus, even assuming that Archer's characterization of the incident resulting in the juvenile adjudication is correct, he would still receive two points for it under U.S.S.G. §§ 4A1.1(b) & 4A1.2(a)(1). In this context, the District Court correctly determined Archer's criminal history under the advisory Guidelines.

B. Malik Davis

Davis first contends that the District Court should have exercised its discretion to depart downward pursuant to U.S.S.G. § 4A1.3(b) because his designation as a career offender under U.S.S.G. § 4B1.1(a) over-represents his criminal history. Absent legal error, we lack jurisdiction to consider a District Court's decision not to depart. *United States v. Jackson*, 467 F.3d 834, 838 (3d Cir. 2006). The District Court considered Davis's argument that the career offender designation over-represented his criminal history and concluded that it did not. There is no allegation that the Court misunderstood its role or otherwise committed legal error. Accordingly, we lack jurisdiction to consider the issue of discretion.

Davis also argues that his designation as a career offender under U.S.S.G. § 4B1.1(a) violates his Fifth and Sixth Amendment rights because his prior

5

convictions were not charged in the indictment or proved to a jury beyond a reasonable doubt. However, because the career offender designation did not expose Davis to a penalty beyond the statutory maximum, there is no constitutional violation. *See United States v. Grier*, 475 F.3d 556, 562 (3d Cir. 2007) (*en banc*) ("Judicial factfinding in the course of selecting a sentence within the permissible range does not offend the Fifth and Sixth Amendment rights to a jury trial and proof beyond a reasonable doubt.").

Davis's next contention is that the District Court erred in imposing the mandatory minimum sentence under 18 U.S.C. § 924(c) for intentional discharge of a weapon during a crime of violence because it was not clear which defendant fired the weapon. However, it is well established that a criminal defendant is liable for the reasonably foreseeable actions of each of his or her co-conspirators. *Pinkerton v. United States*, 328 U.S. 640, 647–48 (1946); *United States v. Ramos*, 147 F.3d 281, 286 (3d Cir. 1998) (applying *Pinkerton* liability in the contest of § 924(c)); *United States v. Casiano*, 113 F.3d 420, 427 (3d Cir. 1997) (same).

Finally, Davis claims that the District Court failed to take into account certain 18 U.S.C. § 3553(a) considerations—such as his youth and remorse for his involvement in the events of conviction—in fashioning an appropriate sentence. We must "determine if the [C]ourt acted reasonably in imposing the resulting sentence . . . by considering the relevant factors." *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006). Having reviewed the record, we are satisfied that the Court appropriately assessed each of the

relevant § 3553(a) factors in this case.

C. Tyree Stratton

Stratton, the only appellant tried by a jury, contends that he was denied a fair trial and that his sentence was unreasonable. With regard to the trial, he asserts that the prosecutor's opening statement was improper because in it she said the following:

> The evidence will also show that the threat that Officer Shackles perceived was very real because the gun that Anthony Archer was holding that day and pointing in the officer's direction was loaded. It was a Taurus semiautomatic pistol. It was loaded with hollow-point bullets. And at the trial you will hear that hollow-point bullets are the sort of bullets that are designed to penetrate Kevlar vests, the bulletproof vests that police officers wear. These are the kind of bullets you will hear that are commonly known as "cop-killer" bullets.

App. 55–56. Stratton did not object to the statement at trial, and thus we review it for plain error under Federal Rule of Criminal Procedure 52. To establish plain error, Stratton must "show not only that error affected the outcome of the trial, but that the error was clear or obvious under current law. If these requirements are met, we *may* reverse . . . if the error 'seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Rivas*, 493 F.3d 131, 136 (3d Cir. 2007) (emphasis in original) (quoting *Johnson v. United States*, 520 U.S. 461, 470 (1997)). Even assuming that these threshold inquiries are met in this case, we do not believe that the reference to "cop-killer" bullets (which, indeed, is how these bullets are known) worked to prejudice Stratton in a way that would "seriously affect" his trial.

Along the same theme, Stratton contends that the District Court erred by

overruling his objection to a police officer's testimony that the bullets in Archer's gun were "cop-killer" bullets. He argues that the reference was unfairly prejudicial and the prejudice outweighed any probative value under Federal Rule of Evidence 403. We review the District Court's ruling for abuse of discretion. *United States v. Givan*, 320 F.3d 452, 461 (3d Cir. 2003). The Court assessed the evidence, finding it probative on the issue of danger and on the issue of conspiracy. It also sought assurance from the Government that there would be no further use of the term in subsequent portions of the trial. We conclude that the Court's analysis struck an appropriate balance under Rule 403.

With regard to his sentence, Stratton argues that it is unreasonable because the District Court adopted the Pre-Sentence Report's advisory Guidelines range, which included enhancements for the actions of Stratton's co-defendants, and because the Court did not properly evaluate the § 3553(a) factors in its ultimate sentence. As discussed above, a defendant is liable for the reasonably foreseeable actions of his or her co-conspirators, so his first argument is unavailing. Next, the record reflects that the District Court properly considered the § 3553(a) factors, and indeed sought to fashion a sentence that was in line with that of Stratton's co-conspirators and reflected the severity of the offense, but was still well below the statutory maximum because the District Judge "harbor[ed] the (modest) hope that defendant's release in middle age will find his antisocial fires banked sufficiently that he may, just possibly, reenter society as something

8

short of the 'urban terrorist' he matured into on November 12, 2004."

After this case was submitted, Stratton moved to supplement his brief to request remand to the District Court for a new sentencing hearing on the ground that his criminal history category would be calculated differently in light of the United States Sentencing Commission's amendment to the criminal history provisions of the Sentencing Guidelines. Specifically, he contends that, in light of Amendment 709, he would receive only one criminal history point, rather than three, for his previous convictions for burglary, possession of an instrument of a crime, and criminal conspiracy, because he was sentenced for all three of those crimes on the same day. We need not consider the merits of this argument because Amendment 709 was not given retroactive effect pursuant to U.S.S.G. § 1B1.10(c). *See also United States v. Wood*, __ F.3d __, 2008 WL 1902663 (3d Cir. May 1, 2008).

* * *

We thus affirm on all issues.

9