NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2372
_____

UNITED STATES OF AMERICA

v.

ANTHONY VETRI,
                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-15-cr-00157-002)
District Judge: Honorable Gerald J. Pappert
_____

Argued: March 3, 2020

Before: SMITH, *Chief Judge*, HARDIMAN, and KRAUSE, *Circuit Judges*.

(Filed: April 23, 2020)

Peter Goldberger [Argued]
Pamela A. Wilk
50 Rittenhouse Place
Ardmore, PA 19003
     *Attorneys for Appellant*

Bernadette A. McKeon [Argued]
Jonathan B. Ortiz
David E. Troyer
William M. McSwain
Robert A. Zauzmer
Office of the United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
  *Attorneys for Appellee*

_____

OPINION[*]

_____

HARDIMAN, *Circuit Judge*.

Throughout the late 2000s, licensed pharmacist Mitesh Patel illegally supplied several men with oxycodone to sell on the streets. Two of those men included Patel's business partner, Gbolahan Olabode, and Appellant Anthony Vetri. This scheme began to unravel in 2010 when Patel, faced with dwindling supply, distributed most of his pills to Olabode. Vetri responded by asking one of his customers, Michael Vandergrift, to murder Olabode in exchange for more oxycodone pills. Vandergrift and Michael

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Mangold gunned Olabode down in his driveway on January 4, 2012, while accomplice Allen Carter waited in the getaway car.

A jury convicted Vetri of murder in violation of 18 U.S.C. § 924(j)(1) and conspiracy to distribute oxycodone in violation of 21 U.S.C. § 846. The District Court sentenced Vetri to life in prison for the murder and a consecutive term of 240 months' imprisonment for the drug conspiracy. He filed this timely appeal raising five issues we will address in turn.

I[1]

Vetri first claims the District Court erred when it admitted into evidence a video in which Vetri jokes with his three-year-old daughter about Olabode's murder. The Government found the video when, pursuant to a warrant, it searched Vetri's cell phone and found it embedded in a text Vetri sent to Vandergrift. Vetri claims the evidence was obtained in violation of his Fourth Amendment rights because the search warrant was overbroad. According to Vetri, the affidavit supporting the warrant did not establish

---

[1] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. "In reviewing a motion to suppress, we review a district court's factual finding for clear error, and we exercise de novo review over its application of the law to those factual findings." *United States v. Goldstein*, 914 F.3d 200, 203 n.15 (3d Cir. 2019) (internal quotation marks and citation omitted).

probable cause to search his cell phones. He also claims that even if the warrant was valid, the Government had no right to view the video.

A

The body of the Government's affidavit of probable cause mentioned electronic devices but did not mention cell phones. However, "Attachment B" to the affidavit requested the seizure of "[c]ellular telephones (including searching the memory thereof)." App. 437. According to the affidavit, drug traffickers often use "electronic equipment *such as* computers, telex machines . . . and pagers to generate, transfer, count, record, and/or store" information. App. 462 ¶ 60(c) (emphasis added). The Government also requested authority to "seize evidence and instrumentalities of the schemes . . . whether maintained in paper, electronic or magnetic form and all computer systems required to retrieve such evidence and instrumentalities." *Id*. at ¶ 61. The Magistrate Judge incorporated part of this affidavit when issuing the search warrant, finding probable cause for the search and seizure of the items listed in "Attachment B." App. 433.

Vetri claims the affidavit's failure to specifically mention cell phones in its body precludes their seizure. He argues the affidavit supported probable cause that evidence of criminal activity might be found in "*other* kinds of electronic equipment" but "was less than 'bare bones' when it came to cell phones." Vetri Br. 19 (quoting *United States v. Leon*, 468 U.S. 897, 915, 923 n. 24 (1984)). Vetri also notes that none of the supporting confidential sources stated he owned or used cell phones. So, he concludes, the affidavit

did not provide probable cause to issue a search warrant to search his cell phones, and thus was overbroad.

We hold the warrant was not overbroad. Probable cause existed because the totality of the circumstances suggested "there [was] a fair probability that contraband or evidence of a crime [would] be found" in Vetri's cell phones. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). While it is perplexing that the body of the affidavit did not mention cell phones, the qualifier "such as" shows the list was merely illustrative of the kinds of electronic equipment drug traffickers might use. *See Bragdon v. Abbott*, 524 U.S. 624, 639 (1998). Cell phones are plainly among that broader category of electronic equipment. And Attachment B specifically mentioned them, so the warrant authorized the search and seizure of Vetri's cell phones.

B

Vetri next argues that even if the warrant authorized the seizure of his cell phones, the District Court still should have suppressed the video because it was not in plain view. The relevant precedent on this point is *United States v. Stabile*, 633 F.3d 219 (3d Cir. 2011). In that case, a magistrate judge issued a warrant to search computer hard drives for evidence of financial crimes and agents found child pornography. We held there was no Fourth Amendment violation because the "incriminating character of the" child pornography file names was "immediately apparent." *Id*. at 242. Vetri distinguishes *Stabile* by noting that here the video's thumbnail is an innocuous picture of his daughter.

5

Therefore, Vetri argues, the agents were not permitted to play the video to learn of the incriminating content.

We are unpersuaded by this argument. As we have recognized, law enforcement can perform a cursory review of all electronic files because "criminals can easily alter file names and file extensions to conceal contraband." *Id*. at 239. Here, the agent played the video "to view its contents because a thorough . . . search requires a broad examination of files on the [phone] to ensure that file[s] . . . have not been manipulated to conceal their contents." *Id*. at 241. On Vetri's view, a criminal could insulate incriminating videos from search by presenting them as innocuous images. Here, the agent did not "unreasonably expand the scope of his search . . . viewing [the video's] contents." *Id*. The agent seeking evidence of financial and drug trafficking crimes had cause to believe Vetri conspired with Michael Vandergrift to distribute oxycodone. While performing a targeted search of Vetri and Vandergrift's conversations, the agent uncovered the video. Here, the video was sent between coconspirators, so there was "no practical substitute for actually looking in many (perhaps all) folders and sometimes at the documents contained within those folders . . . ." *Id*. at 239 (quoting *United States v. Burgess,* 576 F.3d 1078, 1094 (10th Cir. 2009)). Therefore, we hold the District Court did not err when it denied Vetri's motion to suppress evidence.

## II

Vetri next claims the evidence at trial was insufficient to support his conviction of murder under 18 U.S.C. § 924(j)(1). The District Court instructed the jury that both Vetri

and Vandergrift could commit murder by personally committing the offense; by aiding and abetting another person in committing the offense; or as co-conspirators under *Pinkerton v. United States*, 328 U.S. 640 (1946). To prove *Pinkerton* liability, the Government had to show Vandergrift's use of a firearm to commit murder was reasonably foreseeable to Vetri and within the scope and in furtherance of the drug conspiracy. *Id.* at 647–48 (1946); *United States v. Casiano*, 113 F.3d 420, 427 (3d Cir. 1996).

The Government adduced evidence showing Vetri knew Michael Mangold would be participating in the murder and would be using a gun. Vetri had warned Vandergrift that Olabode was a bodybuilder who carried a gun. Vetri also knew Vandergrift had access to guns because Vandergrift had bought guns during a trip to Kansas. And Vetri expressed no surprise that Vandergrift and Mangold had used firearms and asked the men what they had done with the guns the day after the murder. Viewing the evidence in the light most favorable to the Government, "we conclude that the jury's verdict did not 'fall below the threshold of bare rationality.'" *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 432–33 (3d Cir. 2013) (quoting *Coleman v. Johnson*, 566 U.S. 650, 656 (2012)). A reasonable juror considering these pieces of evidence in their totality could find that Vetri foresaw that Vandergrift would use a gun to murder Olabode.

III

Vetri next argues the District Court abused its discretion when it allowed the Government to offer evidence of Vandergrift and Carter's straw purchase of firearms

7

unrelated to the murder to establish knowledge and foreseeability. See FED. R. EVID. 404(b).

Vetri argues that the straw purchase was not relevant, so its probative value was substantially outweighed by the risk of unfair prejudice. *Id*. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. If Vetri knew Vandergrift had easy access to firearms, it is more probable that he would foresee Vandergrift using a firearm to carry out the murder. Here, Carter testified that he and Vandergrift purchased four firearms in Kansas, including a Baby Desert Eagle firearm specifically for Vetri. App. 1387. Eric Maratea, another Vetri acquaintance, testified that Vetri referred to Vandergrift, Mangold and Carter as "his guys and that they work for him. They . . . buy guns for him," specifically Baby Desert Eagles. App. 1651. This evidence tends to show that Vetri knew Vandergrift had access to firearms for the murder because Vandergrift was supplying Vetri with a specific type of firearm.

The probative value is high because this evidence was essential to prove the knowledge element of *Pinkerton* liability, because no witness testified that Vetri knew that Vandergrift would use a gun to murder Olabode. And while there is the risk of some prejudice, as the District Court found, "[t]he Kansas trip [did] not involve any violent acts that may [have] weigh[ed] heavily in the jurors' minds." App. 18. We therefore hold that the District Court's finding that the risk of prejudice did not substantially outweigh the

8

probative value of the evidence is not "clearly contrary to reason." *United States v. Butch*, 256 F.3d 171, 175 (3d Cir. 2001).

## IV

Vetri next contends that the District Court should not have admitted Vandergrift's statements to a cellmate that implicated Vetri in the murder of Olabode. He claims Vandergrift's out-of-court statements that he had murdered Olabode for Vetri in exchange for pills were not admissible under Rule 804(b)(3) as statements against Vandergrift's penal interest because they were not self-inculpatory.

Our review of the record leads us to conclude that the District Court did not abuse its discretion when it admitted the statements because they inculpated both Vandergrift and Vetri. Vandergrift's statements to his cellmate did not try to "shift blame or curry favor," and the Government corroborated those statements through additional evidence and testimony. *Williamson v. United States*, 512 U.S. 594, 603, 605 (1994). Nor were the statements separate and severable, because they described Vetri's role in the murder plot, including Vandergrift's motive, how he located Olabode, and how he carried out the murder.

## V

Finally, Vetri argues that the District Court erred by treating the Sentencing Guidelines as presumptively reasonable. Because Vetri did not object in the District Court, we review this issue for plain error. *United States v. Flores-Mejia*, 759 F.3d 253, 254 (3d Cir. 2014) (en banc).

Vetri has failed to carry his high burden. We are unpersuaded that the Court clearly erred or that, "but for the error, the outcome of the proceeding would have been different." *United States v. Azcona-Polanco*, 865 F.3d 148, 151 (3d Cir. 2017) (internal quotation marks and citations omitted). While the Court used the words "presumptively reasonable" to describe the guidelines, App. 2137, the record shows that it considered the Guidelines to be only one factor in fashioning a reasonable sentence. After hearing argument from both parties, the Court considered: the serious nature of Vetri's crime, his history and characteristics, the need for a life sentence to promote respect for the law and to protect the public from Vetri, whether another sentence would be appropriate, and Vetri's utter lack of remorse. Only after considering "the law and the facts and the sentencing guidelines and the statutory [Section 3553(a)] factors" did the Court impose a sentence of life imprisonment plus 240 months. App. 2140. The District Court did not commit error, plain or otherwise, in sentencing Vetri.

\* \* \*

For the reasons stated, we will affirm the District Court's judgment of sentence.