

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-19-2008

# USA v. Shedrick

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4448

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Shedrick" (2008). *2008 Decisions*. Paper 69.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/69

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-4448

UNITED STATES OF AMERICA,

Appellee

v.

JAMES SHEDRICK

Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Crim. No. CR 02-532-1)
Honorable Legrome D. Davis, District Judge

Submitted under Third Circuit LAR 34.1(a)
December 3, 2008

BEFORE:  AMBRO and GREENBERG, <u>Circuit</u> <u>Judges</u>,
and RODRIGUEZ,<sup>*</sup> <u>District</u> <u>Judge</u>

(Filed: December 19, 2008)

OPINION

---

<sup>*</sup>The Honorable Joseph H. Rodriguez, Judge of the United States District Court for the District of New Jersey, sitting by designation.

RODRIGUEZ, <u>District</u> <u>Judge</u>:

James Shedrick appeals from his sentence imposed after a plea of guilty to one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). He was sentenced to 96 months imprisonment, a term of supervised release of three years, a fine of $7,500.00, and a special assessment of $100.00. Shedrick contends that the District Court abused its discretion by granting an upward departure of eight offense levels, and that it imposed an unreasonable sentence. We disagree and will affirm the sentence imposed.

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1291, as this matter comes before the Court due to a timely appeal from the order of judgment in a criminal case entered on November 13, 2007. Additionally, this Court has jurisdiction pursuant to 18 U.S.C. § 3742 to review the sentence imposed.

## II. FACTS AND PROCEDURAL HISTORY

The underlying conduct that gave rise to the initial indictment occurred on July 11, 2002. On that date, police officers arrived at 64th Street and Greenway Avenue in Philadelphia, PA, in response to 911 emergency calls reporting a man with a gun. Shortly thereafter, Officer Pembrook spotted Appellant Shedrick standing in the middle of the street with a large silver revolver. He radioed for backup, and was quickly joined by Officers Mason, Rutter, and Gallen-Ruiz. All officers then instructed Appellant to drop

2

his weapon. Appellant chose not cooperate; he unsuccessfully attempted to fire his revolver into the air three times. Appellant then opened the cylinder of the revolver, and six empty shell casings dropped to the ground. While Appellant checked his weapon, the officers tackled him and placed him under arrest.

Before moving on, it is important to note that Appellant discharged his firearm prior to the officers' arrival. Two shots hit a moving van with two passengers inside. The first shot hit the top of the hood, and the second hit the middle of the windshield– just missing driver Lay Nguyen and his passenger-employee Patricia Edwards. (App. 45.) Neither of the passengers sustained any injuries.

This case originally came before the Eastern District of Pennsylvania, when on August 27, 2002, the grand jury returned an indictment for Appellant James Shedrick. Appellant was charged with one count of possession of a firearm by a felon pursuant to 18 U.S.C. § 922(g)(1). On November 8, 2002, Appellant pleaded guilty to that charge. He stipulated to the following facts: (1) possession of a Smith & Wesson .357 magnum caliber revolver; (2) previous conviction of a crime punishable by imprisonment for more than one year; and (3) the relevant firearm affected interstate commerce as it was manufactured outside Pennsylvania. (Suppl. App. 3.) Appellant further stipulated that "the Court may make factual and legal determinations that differ from these stipulations and that may result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed." (Id.)

3

The plea acknowledged that Appellant's maximum statutory sentence under § 922(g)(1) could be as much as ten years' imprisonment, including three years' supervised release, a $250,000.00 fine, and a $100.00 special assessment. (Id. at 2.) Notably, the parties agreed that each was "free to argue the applicability of any other provision of the Sentencing Guidelines, including offense conduct, offense characteristics, criminal history, adjustments and departures..." (Id. at 3.) Finally, relevant portions of the plea agreement also included the following waiver provision:

> 10.    In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. 3742, 28 U.S.C. 1291, 28 U.S.C. 2255, or any other provision of law.
>
> (A)    Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.
>
> (B)    If the government does not appeal, then notwithstanding the waiver provision set forth in paragraph 10 above, the defendant may file a direct appeal but may raise only claims that:
>
> > (i)    if the sentence exceeded the statutory maximum; or
> > (ii)    if the judge erroneously departed upward from the otherwise applicable sentencing guideline range.

(Suppl. App. 4.) During an extensive plea colloquy with Judge Davis, Appellant confirmed in open court that he fully understood the terms of the plea agreement. (See App. 21-35.)

Two weeks prior to the sentencing hearing, the Government filed a sentencing memorandum containing two recommendations: (1) Appellant should be subject to a

4

four-level enhancement for possessing a firearm in connection with a felony offense (drug dealing); and (2) the District Court should depart upward eight levels from the Guidelines range because Appellant fired the weapon during the commission of his offense (shooting at the passenger van). Consistent with these recommendations, the applicable Guidelines' range became 87 to 108 months. (Suppl. App. 18.) Appellant objected to these recommendations, instead contending that he was subject to a 46 to 57 month range.[1] (App. 72-73.)

The sentencing hearing was thereafter held on February 21, 2003. The District Court heard testimony from Lay Nguyen (the driver of the van), Aki Brickhouse (the man responsible for transferring possession of the gun to Appellant's brother), Detective Missimer (the detective who interviewed Appellant's brother– Tarik Robinson), Rachel Jacobs (Appellant's mother), and Appellant himself, who made a statement from counsel's table.

The Court ultimately accepted as credible the testimony from Brickhouse that Appellant carried the weapon in connection with "hustling", that is, dealing cocaine on the streets. (App. 56, 91.) The Court also accepted as credible the testimony of Nguyen, who testified that Appellant was the person who shot twice at her van. (App. 51, 93.) In

---

[1]    The P.S.R. calculated Appellant's base offense level at 20. Due to Appellant's prior felony conviction for a controlled substance offense, the calculation was subject to a four-level enhancement under U.S.S.G. § 2K2.1(b)(5). The resultant 24 was then subject to a three-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1. These adjustments finally resulted in a combined point total of 21. (App. 15-16.)

fact, Judge Davis recalled Nguyen to directly answer questions so as to verify that Appellant was properly identified.[2] As Judge Davis told Nguyen, "I'm asking you these questions because it's very important to me as a judge that I know what the facts are and that I do the right thing." (App. 87.)

The District Court ultimately applied the four-level enhancement associated with carrying the weapon in connection with dealing drugs and the eight-level upward departure for shooting at the passenger van. (Suppl. App. 18.) The Court then adjusted downward three levels for Appellant's acceptance of responsibility, which brought the total to 29. (App. 94.) With the appropriate sentencing range at 87 to 108 months, the Court imposed a sentence of 96 months, including three years' supervised release, a $7,500 fine, and the mandatory $100 special assessment. (Id. at 95-96.)

Shedrick received court-appointed counsel for purposes of appeal. Six months after the sentencing, counsel filed a motion for enlargement of time to enter a notice of appeal *nunc pro tunc*. (Suppl. App. p. 18.) That motion was denied as untimely on August 27, 2003, and we dismissed the appeal as untimely on November 25, 2003. (Id. at

---

[2] There was one discrepancy in Nguyen's testimony. Appellant was arrested wearing a black t-shirt. According to Nguyen, the shooter wore a white t-shirt. When Nguyen was confronted with that discrepancy, he answered that he was focused on the gun more than the particular clothes of the defendant. Significantly, Nguyen testified that the gun was chrome, and the Smith & Wesson seized from Appellant was indeed chrome. Additionally, because the police station Nguyen went to after the shooting was only two blocks away, Nguyen returned to the scene quickly and witnessed Appellant being tackled in the "same place" where the shooting had occurred. (App. 88.)

19.) Appellant thereafter (through counsel) filed a § 2255 habeas petition for ineffective assistance of counsel, which again was denied by the District Court. A *pro se* petition for a certificate of appealability was then filed before this Court, which was granted for two issues: "whether counsel was ineffective for failing to advise [Appellant] of a possible upward departure at sentencing; and whether counsel was ineffective for filing an untimely appeal." (Id. at 19.)

In a precedential opinion, see, generally, United States v. Shedrick, 493 F.3d 292 (3d Cir. 2006), we answered in the negative as to the first issue, but found in favor of Appellant as to the second. We also stated that the only issue preserved for appeal was whether the eight-level upward departure was erroneous. Id. at 303. Because that issue was extensively briefed, this Court decided it on the merits, finding that the District Court did not abuse its discretion in imposing the sentence. (Suppl. App. 31-33.) Appellant then filed a motion for rehearing, contending that it was improper for this Court to rule on that issue. We agreed, noting that the usual rule of thumb on a § 2255 case is to remand to the District Court so as to allow Appellant to be in the same position as if he had effective counsel. See Shedrick, supra, at 303. Thus, we vacated that portion of the opinion and remanded

> for re-entry of the initial sentence so that there can be a timely appeal... This ... will give [Appellant] the opportunity properly to raise the issue that he had previously expressed a desire for this Court to review and which he explicitly preserved in his plea agreement and colloquy: the propriety of his upward departure.

Id.

On remand, the District Court followed our directive, imposing the same sentence it deemed appropriate at the February 2003 sentencing hearing. This sentence was re-imposed notwithstanding Appellant's contention that the District Court should conduct a *de novo* sentencing hearing consistent with the demands of United States v. Booker, 543 U.S. 220 (2005), decided two years after Appellant's initial sentencing, *and* notwithstanding an extensive colloquy between Judge Davis and Appellant regarding Appellant's certificates of merit attained in prison. Judge Davis explained that he was bound by our directive, and that, in any event, he would impose the same sentence even if Booker governed the case. (App. 121-22.)

### III. STANDARD OF REVIEW

The standard for reviewing whether an upward departure was permissibly granted under the sentencing guidelines is plenary. See United States v. Himler, 355 F.3d 735, 741 (3d Cir. 2004). This Court then reviews the reasonableness of the departure for an abuse of discretion. See United States v. Yeaman, 194 F.3d 442, 456 (3d Cir. 1999). Factual determinations regarding sentencing are reviewed for clear error. United States v. Beckett, 208 F.3d 140, 148 (3d Cir. 2000). Finally, the standard for reviewing whether an appellate waiver is enforceable is *de novo*. See United States v. Jackson, 523 F.3d 234, 237 (3d Cir. 2008).

## IV. DISCUSSION

### A. The Upward Departure

Appellant first contends that the evidence was insufficient to warrant an upward departure in this case. In Appellant's words, "[t]he evidence presented at sentencing was *far from overwhelming*." (Appellant Br., p. 13.) (emphasis added). Pointedly, this Circuit has never required such a high burden of proof at sentencing. Indeed, we have held that a district court applies the preponderance of the evidence standard when determining facts relevant to sentencing. See United States v. Grier, 475 F.3d 556, 568 (3d Cir. 2007) (en banc); *and* United States v. Cooper, 437 F.3d 324, 330 (3d Cir. 2006). Those factual determinations are then reviewed using the deferential clear error standard. Rita v. United States, 551 U.S. ---, 127 S.Ct. 2456, 2471 (2007).

Here, the District Court did not commit clear error when it concluded that Appellant fired the gun at the passenger van. While there may have been a discrepancy with respect to the shirt Appellant wore at the relevant time, that discrepancy was resolved by the Court after recalling Nguyen to testify. (App. 93-94.) The following colloquy between the Court and Nguyen took place:

Court:      [Y]ou took them back to where you were being shot at?

Witness:    Yes.

Court:      Okay. And that's when you saw the man that they tackled, right?

Witness:    Yes.

Court:        Okay. So the man that they tackled, where was he standing in relation to where the man who shot at you was standing?

Witness:     Same place.

Court:        Same place?

Witness:     Yes.

When this colloquy is juxtaposed with the facts that: (1) the police station was only a two blocks from the scene of the shooting, (2) Appellant's gun had six empty shell casings when he was arrested, and (3) the Court found Nguyen's testimony credible, it is evident that the Court's finding that Appellant fired the gun was not clearly erroneous.

Appellant further contends that "[a] jury finding was necessary to determine" whether Appellant shot at the van. The question of whether a jury finding was necessary to determine the factual basis for Appellant's sentencing was answered by the Supreme Court in United States v. Booker, 543 U.S. 220 (2005). In that case, the Supreme Court held in part that the Sixth Amendment right to trial by jury is not implicated during sentencing unless the sentence exceeds the statutory maximum. Id. at 259. Whereas here, the statutory maximum for Appellant's offense was ten years and the range recommended was 87 to 108 months, Appellant was not entitled to a jury finding at sentencing.

Appellant's next contention is that, even if it is true that he fired the gun at the moving passenger van, that fact alone does not make this case sufficiently "special or "unusual" to warrant an upward departure of eight levels. In making this argument, Appellant does himself no favor by citing two key provisions of the U.S. Sentencing

10

Guidelines. First, Appellant cites § 5K2.0, and states that "a district court may grant an upward departure where circumstances exist that the guidelines do not adequately take into consideration." (Appellant Br., p. 15.) Second, Appellant cites U.S.S.G. § 5k2.6 which provides:

> If a weapon or dangerous instrumentality was used or possessed in the commission of the offense[,] the court may increase the sentence above the authorized guidelines range. The extent of the increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others. The discharge of a firearm might warrant a substantial sentence increase.

(Appellant Br., p. 16.) Appellant then asserts, "[a]lthough a firearm is a dangerous weapon, its dangerousness is taken into account under 18 U.S.C. 922(g)(1), felon in possession of a firearm." (Appellant Br., p. 16.) Appellant disregards the finding that he discharged the firearm twice, and instead contends that the weapon was used only "in conjunction with a drug crime", which already provided a four-level sentence enhancement. (Id.) When Appellant does address the firearm discharge, he asserts that "no one was injured" and that "no one was endangered". (App. 16-17.) Appellant is correct that neither occupant of the van was injured, but it flies in the face of common sense to say that "no one was endangered" when Appellant fired twice at a moving van, once hitting the hood, and once hitting the windshield. Indeed, this situation is not one typically contemplated by the guidelines. In such a case, the District Court was authorized to impose "a substantial sentence increase" pursuant to U.S.S.G. § 5K2.6.

Finally, Appellant contends that the extent of the departure was unreasonable.

11

(Appellant Br., p. 17.)  He specifically argues that an eight-level departure was "too large", and that the District Court improperly calculated the departure.  (Id.)  If a District Court "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration ... by the guidelines", then the court may depart from the "relevant guideline range".[3]  See United States v. Queensborough, 227 F.3d 149, (3d Cir. 2000) (citing United States v. Kikumura, 918 F.2d 1084, 1098 (3d Cir. 1990)).

Here, the Government analogized Appellant's conduct to attempted murder, and recommended an offense level of 33.  (App. 91.)  At the sentencing hearing, the Government remarked that the same offense level would result if the Court added four levels for each victim who was assaulted when Appellant fired twice at the van.  (App. 91-92.)  We have held that, where an appropriate circumstance exists, reasoning by analogy "to the guidelines ... is a useful and appropriate tool for determining what offense level a defendant's conduct most closely approximates."  Queensborough, 227 F.3d at 160.  Because Appellant fired his weapon twice at a moving vehicle with two passengers, his conduct does approximate that of attempted murder.  Murder is defined as "the

---

[3] Parties are entitled reasonable notice as to the grounds for departure.  Burns v. United States, 501 U.S. 129, 138-39 (1991).  As the U.S. Probation Officer informed the District Court that it "could upwardly depart because [Appellant] discharged a firearm during the offense striking a vehicle containing two passengers", see P.S.R., Part.E, ¶ 63, and the Government submitted a sentencing memorandum to the Court and Appellant which expressly called for an upward departure of eight levels, (Appellee Br., p. 9.), notice was properly given.

12

unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111(a).

Malice aforethought "is not synonymous with premeditation ... but may also be inferred

from circumstances which show a wanton and depraved spirit, a mind bent on evil

mischief without regard to its consequences." Gov't of Virgin Islands v. Lake, 362 F.2d

770, 774 (3d Cir. 1966). Here, Appellant's conduct epitomizes a "wanton and depraved

spirit." Moreover, as Judge Davis told Appellant at the re-sentencing, "when you fire two

bullets, that becomes an element of premeditation." (App. 118.)

Appellant refutes the analogy to attempted murder, instead contending that a four-

level upward departure consistent with aggravated assault is the proper cross-reference.

(Appellant Br., p. 18.) He cites United States v. Corbin, 998 F.2d 1377 (7th Cir. 1993),

and notes that the Seventh Circuit affirmed a sentence based on a violation of

§ 922(g)(1)– which was then cross-referenced with the applicable guideline for

aggravated assault. (Id.) Appellant's reliance on that case is misguided, however,

because the facts in Corbin are inapposite to the present case. In Corbin, the appellant

never fired his weapon. He did press it against his ex-girlfriend's head, though, which

subsequently caused a "round reddened spot". Corbin, 998 F.2d at 1380. Such an act is

plainly consistent with horn book aggravated assault, as the appellant caused bodily injury

with a deadly weapon. WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., CRIMINAL LAW 608

(1972).

By contrast, Appellant in this case actually discharged his weapon twice, each time

13

aiming at a moving van with two passengers, and each time hitting the van. As such, the two cases are inapposite. In any event, it cannot be said that the District Court abused its discretion when it departed upward eight levels. This conclusion is buttressed by that notion that "[t]he sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court." Rita v. United States, 551 U.S. ---, 127 S.Ct. 2456, 2469 (2007).

**B. Reasonableness of the Sentence**

The second issue presently before this Court is whether Appellant's sentence was unreasonable. Because we hold that Appellant waived this ground for appeal in his plea agreement, we need not reach the merits of this argument. As noted above, Appellant's plea agreement contained the following relevant terms:

> (A)    Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.
>
> (B)    If the government does not appeal, then ... the defendant may file a direct appeal but may raise only claims that:
>
> >    (i)    if the sentence exceeded the statutory maximum; or
> >    (ii)    if the judge erroneously departed upward from the otherwise applicable sentencing guideline range.

Here, the District Court did not exceed the statutory maximum (ten years) when it sentenced Appellant to 96 months, nor did the Government appeal the sentence. Appellant's only valid ground for appeal, therefore, is whether the District Court erroneously departed upward from the otherwise applicable sentencing guideline range, pursuant to 10(B)(ii) of the plea

14

agreement. We addressed that argument above, and concluded that the District Court did not erroneously depart upward.

Waivers of appeals are generally "permissible and enforceable." See United States v. Khattak, 273 F.3d 557, 560 (3d Cir. 2001).[4] When waivers of appeal are entered into "knowingly and voluntarily," they are presumed valid *"unless they work a miscarriage of justice."* See United States v. Lockett, 406 F.3d 207, 213 (3d Cir. 2005) (emphasis added). Lockett is similar to the case before us. The appellant in that case pleaded guilty and was sentenced pre-Booker. Id. He thereafter filed an appeal, challenging his sentence post-Booker. Id. Specifically, he argued that the subsequent development in the law invalidated the appeal waiver contained in his plea agreement, thereby giving him the right to appeal his sentence. Id. This Circuit rejected that argument, holding that "where a criminal defendant has voluntarily and knowingly entered into a plea agreement in which he or she waives the right to appeal, the defendant is not entitled to resentencing in light of Booker." Id. Here, Appellant waived his right to appeal and was sentenced pre-Booker. As a result, he is not entitled to a *de novo* sentencing hearing in light of Booker,

---

[4]    In Khattak, we noted that ten other Courts of Appeals have held waivers of appeal generally permissible and enforceable. Id. at 560-61 (citing United States v. Teeter, 257 F.3d 14, 21 (1st Cir. 2001); United States v. Fisher, 232 F.3d 301, 303 (2d Cir. 2000); United States v. Brown, 232 F.3d 399, 403 (4th Cir. 2000); United States v. Branam, 231 F.3d 931, 932 (5th Cir. 2000); United States v. Fleming, 239 F.3d 761, 763-64 (6th Cir. 2001); United States v. Jemison, 237 F.3d 911, 916-18 (7th Cir. 2000); United States v. Estrada-Bahena, 201 F.3d 1070, 1071 (8th Cir. 2000); United States v. Nguyen, 235 F.3d 1179, 1184 (9th Cir. 2000); United States v. Rubio, 231 F.3d 709, 711 (10th Cir. 2000); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999)).

nor can he now challenge his sentence as unreasonable.

For whatever reason, Appellant does not address this waiver issue in his brief. As a result, there is no dispute as to whether enforcement of the waiver results in a miscarriage of justice. The Government contends that it would not, and cites our decision in United States v. Jackson, 523 F.3d 234, 244 (3d Cir. 2008) to substantiate its contention. Like the situation here, the appellant's appeal in that case relied wholly on the claim that the underlying sentence was unreasonable. Id. We stated:

> In light of *Gall's* deferential abuse-of-discretion standard for reviewing sentence appeals, it will be a rare and unusual situation when claims of an unreasonable sentence, standing alone, will be sufficient to invalidate a waiver because of a miscarriage of justice.

Id. (citing Gall v. United States, *supra*, at 600).

Even though Appellant does not address the waiver argument, our reasoning in Jackson applies squarely to the case before the Court. Appellant stated that he understood the terms of the plea agreement, and he has alleged nothing more on this second ground than mere unreasonableness. As for whether this case constitutes one of the "rare and unusual" situations where the claim of unreasonableness alone could invalidate a waiver, we hold that it does not. The District Court was within its discretion when it analogized Appellant's conduct to attempted murder under the guidelines. The subsequent sentence was consistent with the plea agreement, which stated that "the Court may make factual and legal determinations that differ from these stipulations and that may result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be

16

imposed." (Suppl. App. 3.)  In sum, Appellant has waived his statutory right to appeal on this ground.

## V. CONCLUSION

For the above reasons and the reasons the District Court set forth, we affirm the sentence of James Shedrick re-ordered on November 13, 2007.

17